UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

V.                                                                                       CRIMINAL NO. 4:08-CR-11-DPJ-LRA

CLOIST JIMISON, JR.

ORDER

Defendant Cloist Jimison, Jr., asks the Court for compassionate release under 18 U.S.C. § 3582(c)(1)(A) in light of the coronavirus pandemic and his family's financial circumstances. Mot. [54]; Supp. Mot. [60]; Mot. [62]. Because the Court finds that Jimison does not present an extraordinary and compelling reason justifying a sentence modification, his motions are denied.

I.      Facts and Procedural History

This case originated in 2008, when the federal grand jury charged Jimison with being a felon in possession of a firearm. Jimison pleaded guilty to that 2008 charge and was sentenced to a 51-month term of incarceration to be followed by a three-year term of supervised release. Jimison violated the terms of his supervised release in 2015 and was sentenced to 24 months' imprisonment and 12 months of supervised release. Following his release, Jimison violated the terms of that period of supervised release, and in December 2019, the Court again revoked his supervised release. The Court sentenced Jimison to 18 months' incarceration on the revocation, to run consecutive to a 60-month term of incarceration on a separate charge filed in Case No. 3:19-CR-275-DPJ-LRA. Jimison is currently serving that combined 78-month sentence in the

medium-security facility in Talladega, Alabama (FCI Talladega).[1]  According to the Bureau of Prisons (BOP) website, his projected release date is June 23, 2025.

Jimison "submitted an administrative request for compassionate release on April 8, 2020."  Resp. [58] at 2.  As of May 9, 2020, he had not received a response thereto, but sometime between May 9 and May 12, 2020, Jimison received an unsigned and undated denial of his request.  Notice [61].  Fearing that he may contract COVID-19 if he remains incarcerated, and explaining that his family's financial situation is precarious in light of the pandemic and the pregnancy of his daughter, Jimison asks the Court to let him "be home with [his] wife and kids."  Mot. [54] at 1.

II.     Analysis

Compassionate-release motions arise under 18 U.S.C. § 3582(c)(1)(A)(i), which provides:

> The court may not modify a term of imprisonment once it has been imposed except that . . . the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Although Jimison filed his motion before exhausting his administrative remedies, the Government concedes that he has now done so.  Resp. [63] at 4.  So the sole question is whether, "considering the factors set forth in [§] 3553(a)," "extraordinary and compelling reasons

---

[1] As of June 11, 2020, FCI Talladega reports 3 inmates and 2 staff members have active cases of COVID-19.  Six staff members have recovered from the virus.

2

warrant" a reduction in Jimison's sentence, "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

"United States Sentencing Guideline § 1B1.13 is the applicable policy statement related to compassionate release." *United States v. Dunlap*, No. 1:02-CR-165-1, 2020 WL 2062311, at *1 (M.D.N.C. Apr. 29, 2020). That section—which was adopted before Congress authorized defendants to seek relief under § 3582(c) on their own behalves—"essentially reiterates the requirements of § 3582(c)(1)(A), with the additional requirement that a defendant 'not be a danger to the safety of any other person or to the community.'" *Id.* (quoting U.S.S.G. § 1B1.13(2)).

"The application notes to § 1B1.13 provide examples of extraordinary and compelling reasons to grant a compassionate release[.]" *Id.* Application Note 1 states:

> Provided the defendant [is not a danger to the safety of any other person or to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant --
>
> (i) The defendant is suffering from a terminal illness . . . .
>
> (ii) The defendant is [suffering from a health condition] that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant -- The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances --
>
> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

>> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D)  Other reasons -- As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

Jimison does not assert circumstances fitting neatly under any of these subparts. Instead, he argues that courts have discretion to determine whether "other reasons" constitute extraordinary and compelling reasons. *See* Reply [64] at 2 (citing *United States v. Kelly*, No. 3:13-CR-59-CWR-LRA-2, 2020 WL 2104241, at *6 (S.D. Miss. May 1, 2020)).

There is certainly support for Jimison's argument that courts may look to reasons other than those expressly listed in Application Note 1, but even assuming that is true, this case does not present such reasons. Jimison bases his motion on the COVID-19 outbreak itself coupled with his family's financial circumstances. Notably, he claims no underlying health conditions that render him more susceptible to contracting COVID-19 or more likely to suffer complications if he were to contract it.

Starting with the COVID-19 outbreak, Jimson says "the Court may grant relief based solely on the threat of contracting COVID-19" even without exacerbating health issues. Reply [64] at 4. According to him, Judge Reeves reached that conclusion in *Kelly*, *supra*, but that is not exactly true. In *Kelly*, Judge Reeves noted that "the 'mere existence of COVID-19 in society and the possibility that it may spread to a particular prison' . . . alone 'cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.'" 2020 WL 2104241, at *7 (quoting *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)). The difference for Kelly was that BOP housed him in Oakdale, Louisiana, where, according to BOP's website, there have already been seven

4

inmate deaths and over 200 inmates who tested positive. Judge Reeves concluded that "[g]iven the steadily growing death toll and the apparent continued spread of the disease at Oakdale I, COVID-19 creates an 'extraordinary and compelling reason' potentially warranting a reduced sentence[]." *Id.* at *8.

While this Court is not bound by *Kelly*, Jimison has made no such showing as to FCI Talladega, where the BOP reports three non-fatal inmate cases. Thus, Jimison's "[g]eneral concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." *United States v. Koons*, No. 16-214-05, 2020 WL 1940570, at *5 (W.D. La. Apr. 21, 2020). Were such concerns sufficient, every federal prisoner would be entitled to a sentence reduction under § 3582(c)(1)(A).

As to his family's financial circumstances, Jimison explains:

> His wife, Priscilla Jimison is the sole financial provider for the family. . . . Her employer recently reduced her work hours, and she is only earning roughly $500 a month from her job. . . . Ms. Jimison is providing for herself, her son Raytayvious, and her daughter Regina Marsh. Her daughter Regina is seven months pregnant. Her son, Reginald Marsh, is also expecting to become a father in July 2020. At this time, Ms. Jimison is not making ends meet and the family is unable to save money for the arrival of two more children. Not only is the family missing the income that Mr. Jimison provided, they also recently lost the income that Regina provided as several complications with her pregnancy made her continued employment untenable.

Supp. Mot. [60] at 8.

While these circumstances are unfortunate and no doubt distressing, they are not extraordinary and compelling. In the wake of the coronavirus pandemic, the unemployment rate in the United States rose from under four percent in February 2020 to 13.3% in May 2020 as many businesses were forced to close or modify operations. And every family of an incarcerated

person finds itself faced with one less wage-earning member while their loved one is incarcerated.

Even assuming Jimison had presented an extraordinary and compelling reason for granting compassionate release, guideline § 1B1.13 and the § 3553(a) factors weigh against compassionate release. To begin, § 1B1.13(2)—which § 3582(c) incorporates—states that a sentence may be reduced only when "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

Jimison says he is no longer a risk for recidivism because he has had no disciplinary infractions since those he received while incarcerated from 2010 through 2012 and he has participated in numerous programs "[i]n the few short months since his arrival at Talladega." Supp. Mot. [60] at 10. The Court is certainly pleased that Jimison is taking advantage of the available BOP programs, but it is impossible to ignore his overall record.

Jimison was convicted in Case No. 4:08-CR-11 for being a felon in the possession of a firearm. The Presentence Investigative Report (PSR) in that case documented five juvenile adjudications and six adult convictions. PSR [15] at 7–8. The convictions include theft, assault, domestic violence, and the sale of cocaine. *Id.* After serving his term in that case, his supervised release was first revoked for fourteen violations, the most serious of which related to selling methamphetamine and testing positive for various controlled substances. *See* Pet. [22] (Sealed) at 3–4. After completing another 24-month term of incarceration, Jimison was placed on supervised release which was again revoked for testing positive for drugs and possessing a firearm—the conduct that underlies his conviction in Case No. 3:19-CR-275-DPJ-LRA.

Section 1B1.13(2) incorporates by reference 18 U.S.C. § 3142(g), which provides factors to determine whether a person is a "danger to the safety of any other person or the community."

Among those factors is whether the defendant possessed a firearm. 18 U.S.C. § 3142(g). Jimison did, and it was not his first time.  Finally, "BOP has determined that [Jimison] presents a high risk for recidivism."  Resp. [58] at 2.  On this record, there is a risk to the community.[2]

Nor do the § 3553(a) factors support a sentence reduction here.  Jimison has served a small fraction of his 78-month term of incarceration; a reduction resulting in his immediate release would effectively zero out the 60-month sentence in Case No. 3:19-CR-275-DPJ-LRA and would not "reflect the seriousness of the offense" or the need "to provide just punishment for the offense" in that case.  18 U.S.C.§ 3553(a)(2)(A).  And for the reasons stated, there remains a need "to protect the public from further crimes of the defendant."  18 U.S.C. § 3553(a)(2)(D).

III.    Conclusion

The Court has considered all arguments.  Those not addressed would not have changed the outcome.  For the foregoing reasons, Jimison's motions [54, 60, 62] under § 3582(c)(1)(A) are denied.

**SO ORDERED AND ADJUDGED** this the 15th day of June, 2020.

                                              s/ *Daniel P. Jordan III*
                                              CHIEF UNITED STATES DISTRICT JUDGE

---

[2] Some courts have concluded that the term "safety of the community" refers "not only to the mere danger of physical violence but also to the danger that the defendant might engage in criminal activity to the community's detriment."  *United States v. Mackie*, 876 F. Supp. 1489, 1491 (E.D. La. 1994) (reviewing same phrase in 18 U.S.C. § 3148, which, like 1B1.13, incorporates § 3142(g)).  That is certainly true here.